UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

STEVEN STENTZ,

    Plaintiff,

v.                                 Case No.: 8:23-cv-1321

THE CITY OF DUNEDIN,
a municipality and political
subdivision of the State of Florida,

    Defendant.
_____/

## COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff, STEVEN STENTZ ("STENTZ"), by and through his undersigned counsel, sues Defendant, THE CITY OF DUNEDIN, a municipality and political subdivision of the State of Florida ("CITY"), and alleges:

## PARTIES, JURISDICTION AND VENUE

1. This is an action for damages arising out of Defendant's longstanding custom, policy and practice to selectively enforce its ordinances and laws against Plaintiff in retaliation for Plaintiff's protected First Amendment activity. The conduct of the CITY deprives Plaintiff of the equal protection of the laws, seeks to chill the exercise of important First Amendment rights belonging to Plaintiff and others, and is so blatant,

1

underhanded and transparently retaliatory that it should shock the Court's conscience that it has persisted so long and continues to persist at the seat of City government.

2. STENTZ has, at all times referenced in this Complaint, resided at 591 Baywood Drive North, Dunedin, Pinellas County, Florida 34698.

3. The CITY is a municipal corporation formed under the laws of the State of Florida.

4. The CITY is governed by a Charter which vests governmental and legislative authority of the CITY in a City Commission consisting of a Mayor, Vice-Mayor, and three Commissioners.

5. The Charter further provides for the role of the City Manager and vests broad executive and administrative power in the City Manager. The Charter grants the City Manager sole responsibility over the management and supervision of all City departments and authorizes the City Manager to "see that all laws, provisions of this Charter and acts of the City Commission, subject to the enforcement or administration by the Manager, or by employees under the supervision and control of the Manager, are faithfully executed."

6. Finally, the Charter provides for a City Attorney who "shall advise the City in all legal matters and shall perform any other duties prescribed by the Charter or by General law or by the City Commission."

7. Within the realms of their responsibilities under the Charter, the City Commission, the City Manager, and the City Attorney are policymakers for the City and their actions rise to the level of establishing, enforcing, ratifying, creating, making, or carrying out official policy.

8. A substantial part of the events or omissions giving rise to Plaintiff's claim occurred in the Middle District of Florida, Tampa Division, and the CITY is a municipality with its principal place of business in this district, such that venue is proper pursuant to 42 U.S.C. § 1391.

9. This Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331 and 42 U.S.C. § 1983.

## STENTZ' INITIAL PROTECTED ACTIVITY

10. This case is about a concerted and long-term effort by the City Commission, City Manager Jennifer Bramley, and the City Attorney to abuse power and harass, retaliate against, and unlawfully punish Plaintiff.

11. In 2006, STENTZ moved into a residential home located at 591 Baywood Drive North, Dunedin, Pinellas County, Florida 34698.

12. As early as 2008, STENTZ expressed to the CITY concern about the dangers posed to his family and his neighbors' families due to the speed and reckless nature of vehicles being driven down Baywood Drive North in Dunedin.

13. STENTZ was directed to City traffic engineers Tom Burke and Joan Rice to address his concerns and discuss possible solutions to create a safer traffic flow on Baywood North.

14. Following addition accidents on Baywood Drive, Burke and Rice informed STENTZ that Baywood North may qualify for a stop sign or speed bump but that STENTZ would have to petition the CITY.

15. STENTZ invoked the CITY'S "residential traffic management program" ("RTMP") which allowed citizens to petition the CITY for redress through the installation of traffic calming devices (*i.e.,* "speed bumps") upon the presentation of specific CITY petition forms signed by two-thirds of the residents on a specific CITY street.

16. STENTZ secured the petition signatures of 14 of the 21 residents on his street within weeks, the needed percentage for such efforts, well within the requisite 90-day period, thus qualifying the neighborhood for the RTMP "speed hump" installation.

17. STENTZ timely presented his RTMP petition to Rice, who by then had become the CITY'S Traffic Engineer.

18. Rice thereafter undermined the petition by presenting a flawed traffic study that failed to meet minimum standards of her profession to the City Commission with an adverse recommendation.

19. The CITY left the unsafe condition unaltered and declined the relief sought in the petition.

20. STENTZ appealed to the City Commission and additionally registered a complaint detailing Rice's efforts to undermine the petition and presentation of flawed data.

21. STENTZ additionally made a complaint to the Florida Board of Professional Engineers detailing Rice's departure from minimum standards of her profession.

22. On the basis of STENTZ' complaint, the Florida Board of Professional Engineers conducted an investigation and concluded that the "traffic study" that Rice had performed was "clearly done incorrectly."

## THE AFTERMATH

23. As a result of STENTZ petitioning the CITY for the redress of grievances, and ultimately the State for the failure of the CITY's traffic engineer to meet minimum standards, STENTZ has become public enemy

number 1 in Dunedin, serving as a focal point for every conceivable manner of arbitrary and selective municipal enforcement and action.

24. There are approximately 200 homes in the Baywood subdivision. In 2013, the CITY's Fire Chief and Rice, with the participation of the City Manager and others to STENTZ unknown, installed "no-parking" signs on Baywood Drive directly in front of STENTZ' home but nowhere else in the neighborhood. The Fire Chief and Rice, with the knowledge and participation of the City Manager, Assistant City Manager, and many other high ranking CITY officials, conspired to place these signs solely in front of STENTZ' home by falsifying a justification that emergency vehicles (fire) would have difficulty getting by if STENTZ' vehicles were parked on the roadway in front of his house. At the time, a captain in the Pinellas County Sheriff's Office blew up the CITY's plan, reporting back to the CITY that he passed his cruiser through with no difficulty and that the fire department had no difficulty passing with its emergency vehicles. It was acknowledged that there was no real threat to emergency services yet CITY employees with post hole diggers began installing "no-parking" signs on Baywood Drive solely in front of STENTZ' home and nowhere else.

25. If STENTZ would move his vehicle to park outside the signs, the CITY would move the signs to target solely STENTZ. This was done on several occasions.

26. In addition, the CITY caused the Sheriff to "stake out" STENTZ' home for the purpose of issuing parking citations and taking other code enforcement action directed solely at STENTZ.

27. For example, in 2018 and 2019, the CITY engaged in a tire-chalking campaign directed solely at STENTZ wherein the City Manager and others directed the Sheriff to chalk the tires of STENTZ'S parked vehicle to determine whether he violated a City Code prohibiting vehicles from being parked in the same location more than 72 hours. No other person in the CITY was having their tires chalked but this occurred daily for STENTZ. The tire chalking was, of course, in deliberate disregard of STENTZ'S Fourth Amendment right to be free from unreasonable searches and seizures, including physical invasion of his vehicle through trespass by state actors, but this mattered not to CITY officials bent on showing STENTZ who was in charge.

28. The CITY has caused scores of traffic citations to be issued to STENTZ in pursuit of its unconstitutional scheme.

29. On June 13, 2019, two of the CITY's parking tickets came before the County Court in and for Pinellas County, Florida for adjudication.

30. The County Judge, the Honorable John D Carballo, gathered this extensive history and dismissed the two tickets, expressly finding that the CITY engaged in selective enforcement and citing Zuccarelli v. Barfield, 199 So.3d 399 (Fla. 4th DCA 2016). The CITY did not appeal the determination that it was selectively enforcing its laws and this determination became final thirty days later.

31. Thereafter, additional tickets issued to STENTZ were dismissed by traffic magistrates on the grounds of the CITY's selective enforcement.

32. In 2020, the CITY ultimately appealed one such dismissal to the circuit court appellate division but then abandoned the case on remand. In 2019, 2020, and 2021, the CITY expended in excess of $40,000 on legal fees pursuing a $500 traffic ticket against STENTZ and then failed to pursue the matter on remand, causing yet another determination in favor of STENTZ on its unlawful tickets.

33. During the pendency of the CITY's appeal, the Sheriff of Pinellas County informed the CITY he would refuse to issue additional traffic tickets to STENTZ so long as the "no-parking" signs were placed only in front of STENTZ'S home. The Sheriff advised the City Attorney that he would

resume ticketing STENTZ if "no-parking" signs were applied to everyone on Baywood Drive.

34.  The City Manager and City Attorney, and others who were desirous of continuing to single out STENTZ for disparate treatment, held a Zoom meeting or teleconference in May of 2020 to consider whether to place "no-parking" signs along the entirety of Baywood Drive to meet the Sheriff's precondition to continued enforcement against STENTZ. The City Manager and City Attorney, with the participation of what is believed to be a majority of the City Commission (all fully engaged in "get Steve Stentz at this point") decided against placing "no-parking" signs along the rest of Baywood Drive so as not to "punish" other residents of Dunedin for what they viewed as STENTZ'S anti-social behavior. In other words, the selective enforcement against and punishment of STENTZ would continue as official CITY policy. At the time of this meeting, the Mayor of Dunedin pushed the City Manager to take more action against STENTZ. Multiple other Commissioners joined in pressuring the City Manager to continue the targeted enforcement.

35.  The CITY's selective enforcement spread to other aspects of STENTZ's property. In 2021, the CITY pursued a code enforcement case, directed by the City Manager, claiming that landscaping in the CITY right-of-way in front of STENTZ'S home was unsafe to traffic on Baywood Drive and

9

needed to be removed. However, after STENTZ complied with the code compliance officer's suggestion to lower the foliage and other landscape features, the code compliance officer executed an affidavit finding STENTZ to be in compliance with the CITY's code. The CITY's citizen code enforcement board voted 5-0 to accept that finding in June of 2021. Within days of the property being found in compliance, a City Commissioner and the City Manager directed the reopening of the landscape case to now claim construction on the right-of-way without a permit, a requirement never enforced against a single homeowner in the history of Dunedin. The CITY, despite having multiple engineers on staff, paid $5,000 to hire an outside engineer to claim that STENTZ'S landscape was dangerous to traffic in the neighborhood. The email hiring the outside engineer directed the engineer to reach this conclusion and support the predetermined outcome of the CITY to remove all of STENTZ'S landscaping. This matter is now pending before the Code Enforcement Board. In addition to hiring an outside engineer the CITY has hired outside counsel to prosecute STENTZ on this claimed violation at substantial expense so the City Attorney can act as the Code Enforcement Board's attorney. The selective enforcement against STENTZ continues.

36. The conduct of the Mayor, members of the City Commission, City Manager, and City Attorney to intentionally and repeatedly enforce Dunedin's code of ordinances against STENTZ in a manner different than any other similarly situated citizen constitutes a violation of the Fourteenth Amendment's guarantees of Equal Protection, Due Process, and, through incorporation of the First Amendment, the right to petition the government for the redress of grievances.

37. Other examples of the CITY's unconstitutional behavior toward STENTZ are readily locatable. In 2018, the City issued STENTZ a code violation for the driveway at his home not being wide enough, even though the driveway had been built in 1955. STENTZ had to appear at Code Enforcement hearings and then, after having been found in violation, filed a notice of appeal, after which the City dropped the issue. All homes in the vicinity of the STENTZ home, built around the same time, have the same driveway dimensions but no one else was targeted for this bizarre claim.

38. In 2020, STENTZ had a bulk delivery of mulch deposited in his driveway, a small portion of which fell into the gutter. **Within hours**, multiple Sheriff's deputies and City workers came to the STENTZ home with a backhoe and dump truck to remove the mulch while STENTZ was at work before he could place the mulch in the desired area.

39. The STENTZ property is prone to sea-water flooding and, since approximately 2008, STENTZ had installed rock boulders of various sizes to raise the elevation of his property, and to also provide an improved aesthetic appearance to his yard. In 2020, City Code Enforcement issued STENTZ a citation for these boulders for a "line of sight" violation, when similar features and characteristics in neighbors' yards received no such enforcement action. To avoid any further acrimony for the historic placement of these boulders, STENTZ moved them.

40. The CITY has issued some 46 parking tickets since November 11, 2022. Actions to enforce these remain pending.

41. To establish with greater specificity the depth and scope of the Defendant's unified abuse of STENTZ through the improper and unlawful conduct described herein, a more in depth description of the history and ongoing nature of the retaliation and harassment directed at STENTZ is set forth below.

42. On August 14, 2013, Deputy Fire Chief Barrs confirmed to STENTZ via email that he "did not find any ordinance that prohibits street parking of private automobiles in the Baywood Village subdivision."

43. On August 20, 2013, Pinellas Sheriff's Deputy John Long wrote the following in a report which was disseminated to Deputy Fire Chief Barrs,

Sheriff's Captains Glenn Luben and Larry Nalven: "I advised [City Engineers] that under the city ordinances and Florida State Statutes I could not find anything that addressed the parking complaint and did not believe there were any violations that could be enforced."

44. In addition, City Engineer Tom Burke asked about the street parking issue. He said one of the Sheriff's Deputies told him the city was trying to address the matter "but at this [time], the vehicles are legally parked."

45. On October 31, 2013, Captain Larry Nalven of the Pinellas Sheriff's Office emailed Deputy Glenn Lubin, indicating precisely how they planned to target STENTZ. "They are coming back next week and installing the signs around his house and bend in road. If he moves his vehicles further west then they will return and put up more signs. They are trying not to punish the whole neighborhood but will if he keeps moving his vehicles."

46. On January 13, 2017, Rice, then Transportation and Traffic Engineer for the City of Dunedin, acknowledged in an email to Jorge Quintas, Public Works & Utilities Director and Chief Engineer for the City of Dunedin, that she "feel[s] the Community Center [HOA] wants the No Parking signs in retaliation" for STENTZ's advocacy. Rice, amazingly, indicated she had "no problem" with retaliating against STENTZ.

47. STENTZ has submitted hundreds of photos to various traffic tribunals showing a myriad of neighborhood cars, at all different times of night and day, parked on Baywood Drive North, not subject to any parking restrictions although they are of the exact same character on the same road as STENTZ' vehicles, and they remain unticketed and unchalked.

48. Based on the foregoing, it is clear that the CITY, through its policymakers, has engaged in a pattern, custom, and practice of harassment, abuse of power, retaliation, punishment, selective enforcement, and unconstitutional conduct. STENTZ believes that his protected activity was the driving force behind these actions and that none of this would have occurred but for his petitions and complaints.

49. STENTZ has been damaged and continues to be damaged as a result of the willful, wanton and deliberate actions of the CITY in singling him out for disparate treatment in the creation and enforcements of its laws and retaliation for petitioning his government for redress of grievances.

50. 42 U.S.C. § 1983 expressly prohibits the CITY's ongoing and continued pattern of unconstitutional conduct.

51. This conduct is continuing in nature and the CITY has not relented despite multiple court findings of selective enforcement.

WHEREFORE Plaintiff, STEVEN STENTZ, demands judgment against the CITY for declaratory and injunctive relief, damages, and such other and further relief as the Court deems proper, including but not limited to attorneys' fees and costs of suit.

### DEMAND FOR JURY TRIAL

Plaintiff demands trial by jury on all issues so triable as of right.

Dated this 12th day of June, 2023.

**WEBER, CRABB & WEIN, P.A.**

/s/   *Timothy W. Weber*
Timothy W. Weber, Esq.
FBN: 86789
Jeremy D. Bailie, Esq.
FBN: 118558
timothy.weber@webercrabb.com
jeremy.bailie@webercrabb.com
Secondary lisa.willis@webercrabb.com
5453 Central Avenue
St. Petersburg, Florida 33710
(t): 727-828-9919
(f): 727-828-9924
Attorneys for Steven Stentz